AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br><br>5/19/2021<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___JBB___ DEPUTY | | FILED<br>CLERK, U.S. DISTRICT COURT<br><br>May 19, 2021<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___VM___ DEPUTY |
|---|---|---|

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

CODY MICHAEL BRANDT,

Defendant(s)

Case No.  2:21-mj-02478

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 1, 2020 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Frank Trujillo*
Complainant's signature

Frank Trujillo, ATF TFO
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 19, 2021

Judge's signature

City and state: Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Frank Trujillo, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against CODY MICHAEL BRANDT ("BRANDT") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

2. This affidavit is also made in support of an application for a warrant to search the following digital devices (collectively, the "SUBJECT DEVICES"), in the custody of the Los Angeles Police Department, in Los Angeles, California, as described more fully in Attachment A:

    a. One black Apple i-Phone, with a blue silicone case ("SUBJECT DEVICE 1");

    b. One white Apple i-Phone ("SUBJECT DEVICE 2").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy and attempt to distribute controlled substances); 18 U.S.C. §§ 922(g)(1) (prohibited person in possession of a firearm/ammunition), and 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.  I am a Deputized Task Force Officer ("TFO") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), currently assigned to Los Angeles Field Division, Group 5, where I investigate cases involving the illegal use, sale, and possession of firearms.  I have held this position since 2018.  Additionally, I have been employed by the City of Los Angeles as a Police Officer for approximately twenty-seven years.  For the past twenty-two years, I have worked as a detective in a variety of specialized units, including the Robbery Homicide Division, the Gang and Narcotics Division, the Force Investigation Division, and the West Valley Narcotics Enforcement Detail.  I have investigated a variety of crimes, including robberies, thefts, homicides, and assaults, many of which involved the use of firearms.  From 2008 to 2014, I was assigned as a TFO to the Drug Enforcement Administration ("DEA") and was the investigating officer for a

gang case involving various federal crimes, including racketeering, drug conspiracies, murder conspiracies, and the illegal sale of firearms.

### III. SUMMARY OF PROBABLE CAUSE

6. On or about March 14, 2021, Los Angeles Police Department ("LAPD") officers found a .380 caliber handgun, a 9MM caliber handgun, a semi-automatic rifle, a large amount of ammunition, and over eight pounds of suspected methamphetamine during the search of BRANDT's car. LAPD officers searched BRANDT's car after a vehicle pursuit ended when BRANDT, a convicted felon, jumped out of his car, leaving his girlfriend's infant child and his girlfriend inside, and the car crashed.

7. An ATF interstate nexus expert examined the handguns, rifle, and ammunition and confirmed that all were manufactured outside of the State of California. Because the handguns, rifle, and ammunition were found in California, all items have traveled in and affected interstate commerce.

8. The DEA Southwest laboratory tested the suspected methamphetamine, and the results came back positive for the presence of methamphetamine.

### IV. STATEMENT OF PROBABLE CAUSE

9. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   BRANDT Failed to Stop During a Traffic Stop**

10. At approximately 9:10 p.m., on March 14, 2021, while on patrol in the area of Van Nuys Boulevard and Canterbury

Avenue in Van Nuys, California, LAPD officers saw a white Chevrolet Tahoe (the "Tahoe") with paper plates and temporary tags with numbers that were unreadable. Based on their training and experience, the officers determined that Tahoe possibly had "cold plates," a version of a license plate put on a stolen car to avoid detection. The officers ran the plates, and their system did not return any registration for the Tahoe. The officers initiated a traffic stop to investigate the status of the Tahoe's registration. BRANDT did not pull over, and a brief vehicle pursuit ensued.

11. A few blocks away, in the area of Fillmore Street and Beachy Avenue in Van Nuys, California, officers saw the Tahoe start to slow down and then saw the driver's door open. While the Tahoe was still moving forward, BRANDT jumped out of the driver's side door and started to run away in an apparent attempt to flee. A short distance away, BRANDT jumped a fence into the backyard of a residential property. Meanwhile, the Tahoe crashed through a chain-link fence before eventually coming to a stop against a dirt mound. BRANDT's girlfriend and her infant daughter were still inside the Tahoe when it crashed.

  **B. Officers Find Firearms Inside the Tahoe**

12. While officers were in the process of detaining BRANDT's girlfriend and safely removing her baby from the inside the Tahoe, officers saw a .380 caliber Smith & Wesson handgun on the driver's side floorboard next to the driver's door. The handgun was loaded with one live .380 caliber round in the chamber, along with five .380 caliber rounds in the

corresponding magazine. Also in plain sight, officers recovered a 9MM Smith & Wesson firearm, which was wedged in between the driver's seat and the center console armrest with its grips visibly sticking out. This firearm, which was also loaded, had one live 9MM round in the chamber, along with nine 9MM rounds in the corresponding magazine.

13. Directly behind the rear passenger seat where the infant was seated, officers recovered an unloaded, semi-automatic, Spike's Tactical assault rifle, which was laying in plain view on top of a pile of clothing where the Tahoe's third row seating would normally be located.

**C. BRANDT Is Apprehended and Arrested**

14. Additional officers arrived to assist with a coordinated perimeter and containment in the area where BRANDT was last seen running, and an LAPD K-9 unit was deployed. Officers found BRANDT hiding in the backyard of a residence and took BRANDT into custody.

**D. BRANDT's Statements**

15. Immediately after BRANDT was taken into custody, while still in the field, officers Mirandized BRANDT. While being transported to the police station, BRANDT told one of the officers that "everything" inside the Tahoe belonged to BRANDT and that his girlfriend had "nothing to do" with it and was a good mother.

16. Once at the LAPD police station, I interviewed BRANDT. BRANDT told me that the guns and drugs inside the Tahoe belonged

5

to him and that his girlfriend was not involved with his illegal activities.

  **E. SUBJECT DEVICES Found in the Tahoe**

  17. After BRANDT's arrest, officers told me that they saw two cellphones inside the Tahoe when they recovered the firearms and narcotics.  While the Tahoe was still at the police station awaiting the impound tow, I found the SUBJECT DEVICES on the front passenger side floorboard.

  **F. BRANDT's Prior Felony Convictions**

  18. I reviewed criminal history records for BRANDT and learned that BRANDT has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about November 21, 2006, First Degree Burglary, in violation of Hawaii Revised Statutes section 708-810, in the Superior Court for the State of Hawaii, County of Kauai, Case Number CR-06-1-0095;

    b. On or about December 10, 2008, Prohibited Ownership or Possession of Firearm/Ammunition, in violation of Hawaii Revised Statutes section 134-7(b), and Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes section 712-1243, in the Superior Court for the State of Hawaii, County of Kauai, Case Number CR-08-1-0206;

    c. On or about July 18, 2018, Brandishing a Firearm at a Person in a Vehicle, in violation of California Penal Code section 417(b), Possession for Sale of a Controlled Substance, in violation of California Health and Safety Code section 11378,

and Possession of a Firearm by a Felon, in violation of California Penal Code section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number VA146843.

### G. Drug Lab Test

19. An analyst with the DEA Southwest laboratory examined the seized suspected narcotics from the Tahoe and confirmed that the suspected narcotics are approximately 3.7042 kilograms of methamphetamine.

### H. Interstate Nexus

20. An ATF interstate nexus expert examined the handguns, rifle, and ammunition found in BRANDT's car and confirmed that all were manufactured outside of the State of California. Because the handguns, rifle, and ammunition were found in California, all items have traveled in and affected interstate commerce.

## V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

21. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

    a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their

7

illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

      b.    Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs.  The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

      c.    Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices.  This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.  In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

      d.    Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices.  Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

   e. Individuals engaged in the illegal purchase or sale of drugs and other contraband often use multiple digital devices.

### VI. TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

22. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

   a. Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals, including on their digital devices.

   b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

   c. Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and

9

from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

        d.    Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VII. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

23. As used herein, the term "digital device" includes the SUBJECT DEVICES.

24. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

        a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the

hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

       b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

       c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

       d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading

11

filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

25.     Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

26.     Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VIII. CONCLUSION

27. For all of the reasons described above, there is probable cause to believe that BRANDT has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm. There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>19th</u> day of
<u>  May    </u>, 2020.

_____
HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE